H. C. GLENN, RECEIVER OF TEMPLE TRUST COMPANY, ET AL V. ROBERT M. INGRAM ET AL.

No. 7351. Decided April 5, 1939.
Rehearing overruled June 28, 1939.
(126 S. W., 2d Series, 951.)

*Critz & Woodward,* of Coleman, and *John B. Daniel,* of Temple, for plaintiff in error.

*Callaway & Callaway,* of Brownwood, for defendants in error.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the Court.

This is another usury case. The controlling question is whether or not the form which the loan transaction took was a simulated one, or did it constitute a bona fide purchase of a mechanic's and materialman's note and lien at a discount.

It is undisputed that Robert M. Ingram, one of the plaintiffs in the trial court, made application to U. R. Groom, local representative of Temple Trust Company, for a loan of $3200, to be used in the construction of a house in the town of Brownwood; and Groom agreed to make such loan. At Groom's suggestion, Ingram and wife entered into a contract with one J. E. Wood for the construction of the house and executed a mechanic's and materialman's lien in favor of Wood upon

a certain lot in the town of Brownwood. Contemporaneously therewith they executed a note to Wood for the sum of $3200 secured by a mechanic's and materialman's lien and bearing interest at the rate of 10 per cent per annum payable semi-annually. At the same time, Wood executed an assignment of the note and lien to Temple Trust Company for a recited consideration of $2880. Also at the same time Ingram and wife executed eight notes, aggregating the sum of $3200, payable to Temple Trust Company and bearing interest at the rate of seven per cent per annum, payable semi-annually. To secure the indebtedness evidenced by said notes and designated "bond," Ingram and wife executed a deed of trust upon the lot in Brownwood; it being recited that the notes and deed of trust were given in lieu of and to extend and renew the note and lien given by Ingram and wife to Wood. All instruments were executed at the office of U. R. Groom and bore date May 26, 1924.

The jury found that in the preparation and execution of all these papers U. R. Groom acted as agent of the Temple Trust Company; that the materialman's lien contract executed in favor of J. E. Wood was executed at the suggestion and advice of the said Groom for the purpose of securing the loan, and that the notes and deed of trust executed in favor of Temple Trust Company were executed for the purpose of consummating said loan.

The testimony of Ingram is not disputed that when check was sent by Temple Trust Company to Groom, payable to Wood for the sum of $2880, he and Wood went to the office of Groom and he was then told by Groom that he would have to accept the sum of $2880, although the loan had been made for $3200. He further testified and it was not disputed, that before the check for $2880 was delivered to Wood he, Ingram, was required to pay the balance of $320.00 to Wood. This Ingram did and the check for $2880 was delivered to Wood.

■ Plaintiffs in error, Temple Trust Company and its receiver, contend that prior to the negotiation for the loan, Groom had an agreement with Wood to the effect that if Wood should take a mechanic's and materialman's contract from Ingram, Temple Trust Company would purchase the note from Wood for the sum of $2880; and that in reality this was what was done. All of the circumstances, as well as the testimony of Groom, show that this was not true; and strongly support the findings of the jury, which in effect show that the transaction was nothing more than a loan by Temple Trust Com-

pany direct to Ingram of $3200, wherein he was required to take a less sum by $320.00 than the actual face of the loan. This made the contract usurious. Schmid v. City National Bank, 132 Texas 115, 114 S. W. (2d) 854.

We call attention to some of the facts and circumstances. As above pointed out, the loan which was discussed between Groom and Ingram, and agreed upon between them, was for $3200 and not for $2880. The jury found that instead of making the loan direct to Ingram in the first instance, it was suggested by Groom, acting for Temple Trust Company, that a contract be made with Wood. Why the intervention of the third party and the adoption of the device of a note and materialman's lien contract? Groom testified as follows:

"Q. Did you ever at any time tell Mr. Wood or Mr. Ingram or anyone else that the Temple Trust Company would pay face value for these notes?

"A. No, sir, I had a contract with Mr. Wood that I would buy a $3200.00 note for $2880.00 provided it drew 7 per cent interest. It depended on the rate of interest that the note drew as to the discount.

"Q. If it had been 10 per cent note you would have paid the face value?

"A. Yes, sir, but Mr. Wood said that he could not get but 7 per cent note."

He further testified:

"Q. Did you tell Mr. Ingram or Mr. Wood that the $320.00 that you discounted from the $3200.00 note was a service charge?

"A. Yes, sir, I said that they had to have that much discount to take care of the closing and handling of the loan. We had bought several notes from Mr. Wood, and he knew that we would not make 7 per cent notes at face value."

Notwithstanding this was his understanding of the matter, Groom prepared both the mechanic's lien contract and the note, and both provided for 10 per cent interest per annum, payable semi-annually. If this had been a bona fide purchase of the note, according to his own testimony he would have taken it at face value. He didn't do so. He immediately on the same date rearranged the notes and method of payment, making the papers show a loan of $3200, and proceeded to discount the loan 10 per cent. His language is this: "Yes, sir, I said that they had to have that much *discount* to take care of the closing and handling of the *loan*." What loan? Manifestly the

loan shown by the notes and deed of trust executed by Ingram and wife. Otherwise there could not have been a discount of $320.00 from the *loan* and the sum of $2880 be left.

■ We think it significant to note that although (according to Groom's statement) Wood had agreed to discount his note 10 per cent, yet there was in fact no discount made by him, because he received from Ingram the additional $320.00. The fact that Groom required this $3200 to be paid by Ingram to Wood before Groom would deliver the check to Wood, and Wood's passive acquiescence in the conduct of Groom, strongly tends to show that Groom and Wood were in collusion.

Without further discussion we think that there was abundant proof to show that the method adopted for handling this loan was simulated, as the findings of the jury indicate. The situation was in legal effect exactly the same as is exhibited in other loans made about the same time. Instead of advancing the sum of $2880 and taking papers evidencing a loan of $3200, the Temple Trust Company took papers evidencing a loan of $3200 and forced Ingram to accept only $2880. In law the $2880 became the real loan and the $320.00 was added to the face of the obligation as additional interest.

The provisions of the deed of trust in this instance are identical with the provisions of the deed of trust discussed in Temple Trust Company et al. v. W. H. Sewell et ux., (this volume, p. 417, 126 S. W. (2d) 943) this day decided. The loan was usurious.

The judgment of the Court of Civil Appeals in reversing and rendering the case as it did (108 S. W. (2d) 306) was correct, and such judgment is in all respects affirmed.

Opinion adopted by the Supreme Court April 5, 1939.

Rehearing overruled June 28, 1939.