**RODRIGUEZ v. R. P. YOUNGBERG FINANCE, Ltd.**

**No. 4827.**

Court of Civil Appeals of Texas. El Paso.

July 18, 1951.

Hugh J. McGovern, Jr., El Paso, for appellant.

W. C. Snow and Kemp, Smith, Brown, Goggin & White, all of El Paso, for appellee.

McGILL, Justice.

This is a usury case. Appellant as plaintiff filed suit against appellee as defendant in the District Court of El Paso County, 41st Judicial District, seeking to recover from defendant under the provisions of Article 5073, Vernon's Ann.Civ.St. the sum of $510.28 alleged to be double the amount of usurious interest paid by him to defendant. Defendant answered by general denial. Trial was to the court without a jury. The court rendered judgment that plaintiff take nothing against defendant and that all costs be paid by plaintiff. No findings of fact or conclusions of law were requested but the court incorporated the following findings and conclusions in the judgment: "* * * the court is of the opinion and finds that the amount of the loan here involved was in excess of $1,000.00, and that therefore Article No. 4764c of the Texas Civil Statutes and the regulations promulgated thereunder by the Texas Board of Insurance Commissioners are inapplicable to this loan made by Defendant to Plaintiff, and Defendant was not limited in the amount of credit insurance and the charges therefore which it could require Plaintiff to furnish as a condition of the making of this loan, and the Court further finds that plaintiff derived certain benefits from said credit insurance, which was issued him, and therefore the charges for such credit insurance was not a subterfuge for the collection of additional interest. The Court further finds that the interest and service charge paid Defendant by Plaintiff were within the legal limits as prescribed by law, and that therefore no usurious interest was paid Defendant by Plaintiff, and Plaintiff is entitled to recover nothing on this suit against Defendant." These findings and conclusions are the basis for appellant's points of error on which this appeal is predicated.

There is no substantial controversy as to the facts in this case. On February 11, 1949, plaintiff, a taxi operator in the city of El Paso, borrowed a sum of money from defendant which was a limited partnership engaged in the business of lending money, with an office at No. 313 Mills Street in the city of El Paso. The amount of cash received by plaintiff from defendant was $1,000. As security for the loan plaintiff executed and delivered to defendant an automobile chattel mortgage on a Pontiac four-door sedan automobile owned by plaintiff. As further security for the loan defendant required that plaintiff procure collision insurance on the automobile and "credit" life, health,

and accident insurance with plaintiff as the insured. The plaintiff agreed that the defendant should procure the collision insurance from Mrs. Yonkman, with whom plaintiff had theretofore carried insurance and defendant did procure such insurance from the Yonkman Agency and paid such agency the sum of $158.30 therefor. (There may be some question whether this amount was $158.30 or $158.40, but this is immaterial). Later, five dollars of this amount was refunded to plaintiff by defendant, Mrs. Yonkman having quoted defendant a rate excessive to this extent; also a "credit" life, health and accident insurance policy, No. 1600-7 with plaintiff as the insured was issued by the Home Life and Accident Insurance Company, which had its principal place of business in Dallas, Texas. This policy was written and issued by Alice C. Youngberg, the authorized agent of this insurance company. Mrs. Youngberg is the wife of R. P. Youngberg, the manager of defendant, and she was employed by defendant as an office manager on a salary. The premium for this policy was composed of two items, one of $36.55, for life insurance, and one of $112.33 for health and accident insurance. The face value of the policy was for $1413.44, which was the amount of the note plaintiff signed evidencing the loan. This sum was arrived at by adding the $1,000 cash paid by defendant to plaintiff, the $158.30 paid by defendant to the Yonkman Agency for collision insurance on the automobile, the $36.55 charged as the premium for life insurance and the $112.33 charged as the premium for health and accident insurance, $96.26 charged as interest, and a charge of $10 for defendant's services and expense incurred in drawing and having filed and recorded instruments in connection with the loan. In the event of plaintiff's death during the period of the loan the policy paid the balance of the loan to defendant and paid to the estate of plaintiff the difference between the face value of the policy (the amount of the loan) and such balance thereof. In the event of sickness or accident incapacitating plaintiff, in accordance with the terms of the policy it paid defendant the monthly installments due on the note, which were fixed at $94.23 per month for a period of fifteen months, when the note matured. Alice C. Youngberg retained seventy-five per cent of the premiums charged for the "credit" life, health and accident insurance as her commission as agent of the Home Life & Accident Insurance Company for selling and issuing the policy, and paid this sum, in the amount of $111.66, to defendant. Plaintiff paid defendant the full amount of the loan note. The interest which he alleged to be usurious is composed of the following items: The $96.26 charged as interest, the amounts charged as premiums for the "credit" life, health and accident insurance policy, i. e., $36.55 for credit life insurance and $112.33 for credit health and accident insurance, and the $10.00 designated as a service charge, totaling $255.14.

Appellant concedes, and properly so, that the money borrowed from appellee includes the $158.30 which was paid by appellee to the Yonkman Agency for collision insurance on the automobile on appellant's instructions. Hirshfeld v. Howard, Tex.Civ.App., 59 S.W. 55, loc. cit. 58, rehearing denied, 60 S.W. 806, (wr. denied).

As a necessary sequence he further concedes that the court's finding that the amount of the loan here involved was in excess of $1,000 is correct. The amount of the loan is claimed by appellant to be $1158.30, i. e., the $1,000 cash paid by defendant to him and the $158.30 paid by defendant on his instructions to the Yonkman Agency for collision insurance on the automobile.

■■ Appellant, nevertheless, contends that the court erred in concluding that Article 4764c, V.A.C.S. and the regulations promulgated thereunder by the Texas Board of Insurance Commissioners are inapplicable to this loan. A mere reading of the Statute and regulations should be sufficient to demonstrate the fallacy of this contention. The Statute, Art. 4764c, V.A.C.S. is a codification of Chapter 81

818

of the General and Special Laws of the 51st Legislature, Regular Session 1949, pages 132 et seq. In the Acts the Chapter is entitled "Credit Life Insurance—Credit Health and Accident Insurance", and in the codification "Credit life insurance and credit health and accident insurance". In Section 1, subd. B(1) of the Act and Codification "Credit Life Insurance" and "Credit Health and Accident Insurance" is defined as "Personal insurance in which the insured are borrowers of sums of money not exceeding One Thousand ($1,000.00) Dollars from lenders who retain an interest in the insurance as security to the loan, and any other personal insurance written in connection with or as part of *such* loan transaction." (Emphasis ours.) The Statute having defined the kind of insurance which it regulates in unambiguous language, there is no room for judicial construction as to the kind of insurance regulated thereby. In determining the legislative intent and purpose in enacting a statute we are not concerned with the usual or customary meaning of words when the Legislature has itself defined their meaning in unambiguous language. Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896, (Com.App. opinion adopted); Humble Oil & Refining Co. v. State, Tex.Civ.App., 158 S.W.2d 336, (wr. ref.). The definition of "credit" insurance contained in the regulations promulgated by the Board of Insurance Commissioners both prior to and subsequent to the enactment of the statute is substantially the same as that contained in the statute. There is no room for judicial construction as to the kind of insurance sought to be regulated thereby. It is by the express terms of the statute and regulations limited to insurance on loans not exceeding $1000. It is not necessary to look to the emergency clause of the Act to clarify its meaning. However, this clause does fortify our conclusion that appellant's first point is entirely without merit and it is overruled.

Appellant next earnestly insists that if the Statute and regulations of the Board are inapplicable to the loan here involved, then appellee violated the regulations of the Board in effect prior to and subsequent to the effective date of the Statute, and violated the statute because both the regulations and the statute impliedly prohibited the writing of "credit" insurance on this type of loan, and the court's conclusion that defendant was not limited in the amount of credit insurance and the charges therefor which it could require plaintiff to furnish as a condition of the making of this loan is erroneous (second point). The Statute became effective April 18, 1949, more than two months after the loan here involved was made. January 5, 1949, the Board of Insurance Commissioners promulgated regulations effective February 1, 1949, in which it is recited: "This regulation is directed to and covers all types of insurers, their agents and employees, engaged in the business of writing or soliciting credit insurance, including all insurance agents who are also engaged in the business of making loans in their individual capacity or as agent, officer or employee of any person, corporation, partnership or association engaged in the loan business." Paragraph 3 of this Order of the Board is: "Credit insurance, for the purposes of this Order is personal insurance in which the insureds are borrowers of sums of money not exceeding $1000.00 from lenders who retain an interest in the insurance as security to the loan, and any other personal insurance written in connection with or as a part of such loan transaction. Credit insurance may be life insurance or health and accident insurance or both. No policy of credit insurance shall hereafter be solicited, written or delivered in this State, unless it shall comply with the following rules and regulations." Appellant's contention, boldly stated, is that by this order the Board in effect outlawed all insurance theretofore falling within the category of "Credit" insurance as that term was generally understood except such "credit" insurance as falls within the definition of the regulations promulgated by the Board. Apart from the fact that there is nothing in the regulations which justifies such an assumption of legislative power by the

Board, in our opinion, any attempt by the Board to exercise such power would have been of at least doubtful validity. Personal insurance by general acceptation properly conprehended by the term "credit" insurance had theretofore been sanctioned by Legislative fiat. Texas Finance & Thrift Ass'n v. State, Tex.Civ. App., 224 S.W.2d 522 (No writ history). The duties of the Board of Insurance Commissioners are to supervise the various types of insurance in this State—not to prohibit the writing thereof. Art. 4679c, V.A.C.S. In our opinion the Legislature has not attempted to delegate the power to prohibit the writing of such insurance to the Board, and certainly there is nothing in the regulations that indicates that the Board has attempted to exercise such power. Also, in our opinion, any attempt by the Legislature to prohibit the requirement of and the writing of "credit" insurance on loans not regulated by the Statute, Art. 4764c, would be at least of doubtful constitutionality as an undue interference with the right of parties to contract, and a discrimination against those desiring to make and those desiring to obtain personal loans of more than $1000. We find nothing in the statute which would justify any implied prohibition of such doubtful constitutionality. The language of the Supreme Court in Commonwealth of Massachusetts v. United N. & S. D. Co., 140 Tex. 417, 168 S.W.2d 226, loc. cit. 229, is pertinent and persuasive: "The settled rule is that when the legislative intent can be gathered from a reasonable interpretation of the language of a statute, it is not permissible to resort to interpretation by implication. Interpretation by implication is permitted only to supply obvious intent not expressly stated, and never to contradict nor add to a statute. Creager v. Hidalgo County Water Improvement Dist., Tex.Com.App., 283 S.W. 151; Shipley v. Floydada [Independent] School Dist., Tex.Com.App., 250 S.W. 159." We decline by judicial interpretation to write into Art. 4764c any such far reaching prohibition as contended for by appellant. The second point is overruled.

Appellant's third and fourth points complain of the court's findings that plaintiff derived certain benefits from the "credit" insurance which was issued to him and that the charges therefor were not a subterfuge for the collection of additional interest, and that the interest and service charge paid defendant by plaintiff were within the legal limits prescribed by law and no usurious interest was paid defendant by plaintiff. The reasoning by which appellant approaches these points is circuitous. He first asserts that if "credit" insurance on loans in excess of $1000 is not within the purview of the statute, Art. 4764c, and is not controlled by the regulations promulgated by the Board, then such transactions must necessarily be governed by the general laws of this State dealing with usury. He then assumes that such transactions are illegal because not covered by statute and regulations and that therefore they are mere subterfuge to exact usurious interest. What we have said disposes of the assumption that such transactions are impliedly prohibited by the statute or regulations, and therefore illegal. The question still remains whether under the general laws of this State dealing with usury such transactions are in substance a mere subterfuge to exact usurious interest.

"Interest" is defined by our statute as "compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money". Art. 5069, V.A.C.S.

"Conventional interest" is "interest which is agreed upon and fixed by the parties to a written contract, not to exceed ten per cent per annum", and "usury" is "interest in excess of the amount allowed by law". Id.

It is well settled that if the amount paid by the borrower to the lender in excess of legal interest is as compensation for the use, forbearance or detention. See Parks, Adm'r v. Lubbock, 92 Tex. 635, 51 S.W. 322, of money loaned, it is usury whatever may be the guise under which the transaction is clothed, Hudmon

v. Foster, Tex.Civ.App., 210 S.W. 262, reversed on other grounds, Tex.Com.App., 231 S.W. 346; and that courts will diligently look through the form of a transaction to discover illegal interest and protect the borrower from its consequences. Temple Trust Co. v. Sewell, 133 Tex. 417, 126 S.W.2d 943, loc. cit. 947, Com.App. opinion adopted. It is appellant's position that since "credit" insurance was required by appellee and was written by an employee of appellee, and appellee received and retained a portion of the premiums paid therefor in addition to interest and service charges, the total of which exceeds the legal rate of 10% per annum, the transaction amounts to a subterfuge to exact usurious interest as a matter of law.

Admittedly a lender may without violating the usury law make an extra charge for any distinctly separate and additional consideration other than the simple lending of money. Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709, (Sup.Ct.). There can be little doubt that appellant did receive material and substantial benefits from the "credit" insurance for which the premiums of $36.55 and $112.33 were charged. As above pointed out, in case of his death during the term of the loan the balance due thereon would be paid by the insurance company and the difference between such balance and the full amount of the loan would be paid by the insurance company to his estate; and in case of his incapacity by accident or sickness during the term of the loan the monthly payments due thereon would be met by the insurance company. Therefore it seems obvious that there was a distinctly separate and additional consideration other than the loaning of money for these premiums which were collected and a part of which was retained by Mrs. Youngberg and turned over to appellee. There is no evidence that the premiums charged were in any respect excessive for this kind of insurance, or that appellant was in any way coerced into acquiring this insurance through Mrs. Youngberg. Nor can it be assumed that appellee acted in bad faith in requiring this type of insurance—in other words, that it was unnecessary as additional

protection for the loan. No statute has been brought to our attention which declares such transaction to be against the public policy of this state. The fact that Art. 4764c, Sec. 6, dealing with similar loans, though in amounts not exceeding $1000, expressly provides that commissions received by lenders or lender agents from insurers for the writing of "credit" insurance shall be considered as compensation for services and not as interest, and that Sec. 4 provides that in such type of loan the borrower shall be given the option to purchase such insurance from any insurer or agent of his own choice, to our minds negatives any statutory declarations of public policy of this state condemning transactions such as are here involved. In the absence of statutory prohibition we approve the following language of the Court of General Sessions of Delaware, in State v. Bankers Finance Corporation, 2 Terry 566, 26 A.2d 220, loc. cit. 225, as applicable to the facts of this case: "If a lender compel a borrower to insure in a company where the lender will get additional commissions, we think such conduct constitutes an unlawful exaction. If, on the other hand, no compulsion whatever is used, but the selection of the insurance company is made by the borrower and such selection results in an agent's commission to the lender, whether the premium be paid by the borrower himself or by the lender at request of the borrower, we see no reason that these commissions should be credited to the borrower. He has no expense in maintaining the agency and has paid but the normal manual rate. There being in this case no evidence of any compulsion in the selection of the company, we do not think the failure to apply the commissions to the account of the borrower constitutes any unlawful charge against the borrower." That the question of good faith on the part of appellee was a question of fact which was decided by the trial court adversely to appellant is clearly demonstrated by the opinion of the Supreme Court of Wisconsin in Friedman v. Wisconsin Acceptance Corp., 192 Wis. 58, 210 N.W. 831, 53 A.L.R. 758, a case decided on facts in no material respect distinguish-

able from the facts here except that no part of the commissions was received by the lender, in which it was held that such charges were not a subterfuge and were not usurious. See also Annotation 21 A.L.R. 876. It is unnecessary to hold that the transaction here was made in good faith as a matter of law. The trial court has in effect found that it was made in good faith and our holding is that it does not appear otherwise as a matter of law.

■ There is no·suggestion that the $10 service charge was exhorbitant or excessive as compensation to appellee for the services actually performed by it in making necessary investigation, preparing instruments required to create the chattel mortgage lien, effect the transfer of title to the automobile and in recording such instruments. The court's finding that the charges were not a subterfuge for the collection of additional interest negatives any such inference; such charges are legitimate. Nevels v. Harris, 129 Tex. 190, 102 S.W.2d 1046, 109 A.L.R. 1464 (Sup.Ct.).

However, the finding that the interest paid defendant by plaintiff was within the limits prescribed by law we have concluded cannot be sustained under the undisputed facts in this case. It appears beyond issue that in arriving at the amount of the note there was included a charge for interest of $96.26. That interest may be reserved in advance at the highest conventional rate has been authoritatively adjudicated in this state. Bothwell v. Farmers & Merchants State Bank & Trust Co. of Rusk, 120 Tex. 1, 30 S.W.2d 289, 76 A.L.R. 1480.

■ It is equally well settled that interest in addition to the highest conventional rate may not be charged on such unearned interest reserved in advance. Id. Appellant evidently knew of this decision and attempted to conform to it by providing in the note that on failure to make any payment when due the holder at his option might mature the note as to all interest *then earned*. By what process appellee arrived at the figure of $96.26 as interest reserved in advance we do not know. We do know that interest computed at the highest conventional rate of 10% on the face of the note less the $96.26 reserved in advance as interest will not total this amount. Applying the monthly payments of $94.23 specified in the note on the dates when such payments become due under the terms of the note, first to the payment of interest then earned and then to the payment of the principal, the following shows the computation of 10% interest for the 15 months period specified in the note to be $89.11.

Amount of Loan: (Face of note less $96.26 included as interest—monthly payments as provided in note $94.23) $1317.18

| Month. | 10% interest | Principal | Balance |
|---|---|---|---|
| 1 | 10.97 | 83.26 | 1233.92 |
| 2 | 10.28 | 83.95 | 1149.97 |
| 3 | 9.58 | 84.65 | 1065.32 |
| 4 | 8.87 | 85.36 | 979.96 |
| 5 | 8.17 | 86.06 | 893.90 |
| 6 | 7.46 | 86.77 | 807.13 |
| 7 | 6.73 | 87.50 | 719.63 |
| 8 | 6.00 | 88.23 | 631.40 |
| 9 | 5.26 | 88.97 | 542.43 |
| 10 | 4.52 | 89.71 | 452.72 |
| 11 | 3.78 | 90.45 | 362.27 |
| 12 | 3.02 | 91.21 | 271.06 |
| 13 | 2.26 | 91.97 | 179.09 |
| 14 | 1.49 | 92.74 | 86.35 |
| 15 | .72 | 86.35 | |
| | 89.11 | 1317.18 | |

Therefore, the $89.11 was the maximum interest that appellee could legally charge for use, forbearance or detention of the money loaned, and the sum of $96.26 admittedly charged as interest exceeded this maximum by $7.15; therefore the charge of $96.26 was usurious and plaintiff under the statute is entitled to recover from the defendant double this sum.

It is therefore ordered that the judgment of the trial court be reversed and judgment is here rendered that plaintiff do have and recover judgment in the sum of $192.52, with legal interest at the rate of 6% per annum thereon from date of judgment. All costs will be taxed against the defendant (appellee).

Reversed and rendered.