**WARE   v.   PAXTON et ux.**

No. 3017.

Court of Civil Appeals of Texas.

Eastland.

Feb. 26, 1954.

Appellees' Motion for Rehearing and to Certify, Denied Feb. 26, 1954.

Ed C. Stearns, Dallas, for appellant.

Fritz, Goldberg & Alexander, Dallas, for appellees.

COLLINGS, Justice.

This suit was brought by V. L. Ware against J. S. Paxton and wife to recover $3,135.82 alleged to be the balance due on a promissory note dated December 29, 1950, plus interest at 10% per annum and $400 attorney's fee and to foreclose a chattel mortgage lien on certain household goods and furniture. The Paxtons alleged in an answer filed March 31, 1951 that in a long series of transactions involving numerous notes they had paid $4,250 usurious interest to Ware. They sought to recover double the amount of such claimed excess payments which more than offset the amount of the note sued upon. Plaintiff Ware answered the cross-action by denying the allegations upon which the Paxtons based their claims for recovery of usurious interest charges. In defense of the Paxton's claim for all payments alleged to have been made before March 30, 1949, Ware pleaded the provisions of Article 5073, Texas Revised Civil Statutes, which provides that all ac-

tions for collection of penalty for usury must be brought within two years from the time said payments have been collected. Upon a jury verdict on special issues, the District Court rendered judgment for the Paxtons in the sum of $181.84, plus costs and interest. V. L. Ware has brought this appeal.

The pleadings and evidence are voluminous and the numerous transactions which form the basis of the claims of the parties hereto are difficult to understand with certainty and exactness. It is undisputed that appellees have made no payments on the note of December 29, 1950 for the sum of $3,048 upon which this suit is brought. The defense urged by the Paxtons is numerous usurious charges alleged to have been made by Ware on transactions extending back to August 19, 1946. It is alleged that such charges together with the statutory penalty thereon should be offset against the principal of the note sued on. The alleged usurious charges, together with the transactions to which they were connected are, as we understand from the evidence, briefly as follows:

The first transaction between the parties was a note dated August 19, 1946 in the sum of $312 upon which "brokerage" charges were made in the sum of $62. This note, including the charges thereon, was paid in full more than two years before this suit was brought.

On June 7, 1947, Ware made a loan to Paxton evidenced by a note for the sum of $616.76 which included a charge of $100 for a "waiver contract." The $100 charge, as explained by Ware, consisted of $11.20 as "service charge, transfer, etc.," $25.80 as interest and $63 for his waiver of the right to collect the loan in the event of Paxton's death, illness, accident or unemployment.

On October 9, 1947, a third note in the sum of $302.04, payable in three monthly installments, was executed which included charges for a total amount of $52.04, of which it was claimed that $5.04 was for interest, $7 for "transfers, titles, telephone, etc.," and $40 for premium on a life, health and accident policy of insurance.

On May 19, 1948, another loan in the sum of $2,156, payable in equal monthly installments for one year which included a service charge of $3.75, an interest charge of $102.50, and $309.25 to Zenith Insurance Co. for a credit, life, health and accident insurance policy, or a total of $415.50. Such note also included an item of $475 as the balance due on former loans, including claimed usurious charges in the amount of $152.04.

The total of all above claimed usurious charges was $629.54, all of which were made in connection with notes executed more than two years before the filing of appellee Paxton's cross-action for usury on March 31, 1951 and as previously noted, $62 of such amount was actually paid more than two years before suit was filed.

On April 29, 1949, Paxton secured another loan from Ware evidenced by a note payable in ten monthly installments, and in the sum of $660 which included a charge of $110 as consideration for Ware waiving his right to demand payment of the note in case of appellee's death, accident or sickness. Thereafter, an additional advance in the sum of $66 was made on this note. All of this note and the additional $66 was paid, except a balance of $136 which was carried forward in another note, as hereinafter set out.

On July 30, 1949, another note in the sum of $132, payable in one month, was executed which included a charge of $32 for the expense of the contract and the cancellation of the debt in the event of Paxton's death, sickness or disability. This note was paid except a balance of $32 which was likewise carried over and included in a subsequent note.

On January 9, 1950, another note was executed for the total sum of $3,744 which included an item of $144 as interest. The note also included a balance of $646 on prior indebtedness. As we understand, this balance on prior indebtedness included a

balance of $478 from the $2,156 note dated May 19, 1948, a balance of $136 from the note for $660 plus the $66 advance dated April 29, 1949, and a $32 balance remaining due on the $132 note dated July 30, 1949.

On the date of the execution of the $3,744 note, Paxton made another note to Ware in the sum of $576, bearing interest from date at the rate of 10%, and payable in one year. It was given for brokerage under an agreement between the parties for various services in connection therewith; for guaranteeing the payment of the $3,744 note to the Mercantile National Bank.

On June 19, 1950, appellee borrowed $675 to which a charge of $67.50 was added for interest and "waiver of rights." This note, in the total sum of $742.50 was made payable on August 3, 1950.

On October 30, 1950, Paxton borrowed $62, to which was added $6.90 for service charges.

The total of the above charges claimed to have been made within a period of two years prior to the filing of appellee's cross-action for usury on March 31, 1951 was $936.40.

On December 29, 1950, another note was executed in the sum of $3,048. This is the note upon which suit was instituted in this case. This note included a balance of $1,164 on the $3,744 note and another balance on prior indebtedness of $1,282.50. As we understand the record, such $1,282.50 balance included a $461 balance on the $576 note dated January 9, 1950, the total amount of the $62.10 note, plus the $6.90 charge thereon or a total of $69, and included the balance of the note dated June 19, 1950 in the sum of $675 plus the $67.50 charge thereon or a total of $742.50, and also included a balance of $10 remaining unpaid on advances made in connection with the $576 note over and above payments made thereon. In addition to the balances brought forward as above set out, the note in question included $74, the price of an air conditioner purchased by Paxton and interest charges on said note.

It was found by the jury in answer to special issues that Ware required Paxton to enter into the waiver contracts as above indicated, and to accept the insurance coverage and other claimed service charges in order for the loans to be made and for the purpose of obtaining compensation by Ware for the use of his money in excess of 10% per annum. The jury found that Ware performed no services for Paxton in connection with these transactions. The jury further found that Paxton had made a payment of $200 for which he had not been given credit.

The judgment in favor of appellee Paxton in the sum of $181.84 does not indicate the manner in which the amount of recovery was ascertained. Appellant, in his brief, undertakes to explain the manner in which the amount of the judgment was determined and appellee does not question the explanation. We, therefore, incorporate the substance of appellant's explanation of the judgment as follows:

Loan of December 29, 1950, less claimed usurious charges thereon    $2520.50
Less the claimed usurious charges made prior to March 31, 1949   629.54

Balance   $1890.96
Less $200.00 for which Appellant had not given Appellee credit   200.00

Total Due by Appellee to Appellant   $1690.96
Due by Appellant to Appellee by doubling the total of claimed usurious charges within two years before suit ($936.40)   1872.80

By offsetting the $1,690.96 against the $1,872.80, leaves the sum of $181.84, the amount of the judgment rendered by the trial court in favor of Appellee.

It is apparent that the trial court found all of the charges and interest made in said transactions to be usurious. Appellant attacks such findings. It is contended by appellant in his 10th and 12th, and in

other points, that the court erred in holding charges for credit, life, health and accident insurance to be improper and in effect usurious interest and, therefore, subject to double penalty. The charges made for such insurance have already been enumerated in connection with loans made by Ware to the Paxtons. As urged by appellant, a lender may, without violating the usury law, make an extra charge for any distinctly separate and additional consideration other than the simple lending of money. Greever v. Persky, 140 Tex. 64, 165 S.W.2d 709.

In the absence of statutory prohibition, a charge for credit insurance which is not excessive, and where there is no compulsion in the selection of the insurance company by which the lender will receive additional commissions or compensation, is not considered as a usurious exaction of interest. The jury found, however, that Ware made the charges for such insurance for the purpose of obtaining compensation for the use of his money in excess of 10% per annum. It is held that if there is an intent to charge usury the courts will look through the form to the substance of the transaction and hold the contract usurious no matter how the transaction may be veiled or disguised. Mitchell v. Napier, 22 Tex. 120; Wellfare v. Realty Trust Co., Tex.Civ.App., 85 S.W.2d 1067; National Bond & Mortgage Corporation v. Mahanay, 124 Tex. 544, 80 S.W.2d 947; Temple Trust Co. v. Sewell, 133 Tex. 417, 126 S.W.2d 943.

There is evidence that Ware required Paxton to take such credit insurance as a prerequisite to the loans made in connection therewith and that Paxton was given no option in the selection of the insurance company which issued the policies. Ware was an agent for the company in which the insurance was placed and was permitted to keep and did keep approximately 84% or 85% of the premiums on such policies. Under such circumstances the court did not err in finding and in holding the charges made by Ware for such insurance to be improper and usurious interest charges. Rodriguez v. R. P. Youngberg, Finance, Ltd., Tex.Civ.App., 241 S.W.2d 815; State v. Bankers Finance Corporation, 2 Terry 566, 41 Del. 566, 26 A.2d 220.

Appellant urges in point No. 9 that the court erred in holding the waiver contracts usurious. He urges that appellees received a benefit through such contracts in that appellant waived the collection of the loans in the event of death, illness, accident, unemployment and other contemplated happenings to appellees, and that in any event the court erred in disregarding the provisions in such waiver contracts to the effect that the Paxtons were not obligated to pay charges provided therein which were not permitted and authorized by law. We are constrained to agree with appellant that the provisions of the waiver contracts were beneficial to the Paxtons. It is our opinion, however, that the waiver contracts were contracts of insurance. The Paxtons were required to take the waiver contracts to secure the loans. Regardless of any benefits that appellees might receive therefrom, Ware was admittedly not licensed to sell insurance and the contracts and charges therefor were invalid and uncollectable. Ware v. Heath, Tex.Civ.App., 237 S.W.2d 362. We agree with appellant that effect should be given the provisions of the waiver contracts that the Paxtons were not obligated to pay charges provided therein which were illegal. This, however, should not render Ware immune from the provisions of the usury law where the evidence shows that he actually collected such illegal charges.

Appellant Ware urged in his 7th point that the action of the court in sustaining objection to questions addressed to him inquiring of his opinion concerning a comparison between charges he made in the waiver contracts and charges made for credit insurance premiums constituted reversible error. Charges and payments for the waiver contracts and credit insurance were illegal or at least improper and uncollectable without regard to the question of whether they were reasonable in considera-

tion of the service rendered. The point is overruled.

▮ In appellant's 8th point it is contended that the court erred in including as usurious interest the purported brokerage charges of $576 made by Ware in connection with the $3,744 Mercantile National Bank note dated January 9, 1950. A broker may lawfully charge a borrower a commission for obtaining a loan from another. It is not permissible, however, for a purported brokerage contract to be used as a devise or subterfuge by which a lender may make loans and exact usurious interest for the use of his money. Donoghue v. State, Tex.Civ.App., 211 S.W.2d 623, N.R.E. The evidence shows that when Paxton secured the loan evidenced by the $3,744 note he received $1,379.46 in cash and the balance of the note represented prior indebtedness to Ware of which a part is claimed to be usurious interest charges including the interest charge on the note in the sum of $144. In order to get the loan Paxton was required to make a written application as follows:

"Application for loan in the amount of $3,744.00 payable $315.00 month.
"To V. L. Ware

"If and only in the event authorized and permitted by law, I promise to pay you the actual and necessary expense in connection with the arranging of this loan, and without intending to limit the generality of the foregoing, including the drawing of the application, agreement and note, borrower's statement, statement of loan, the taking of acknowledgments and affidavits, the preparation of financial statements and the investigation and analysis of my financial responsibility, making and remitting collections, and the endorsement and guaranteeing of my note, it is agreed the reasonable value of such actual and necessary expense is in excess of $576.00, which sum I/we agree to be deducted from said loan only in the event the same is authorized and permitted by law. I do not intend to pay and you have represented to me that you do not intend to charge or collect any interest or charge not authorized by law.

"And if all or part of said charge is not authorized or permitted by law, I am under no obligation to pay same; or, in event of payment by me, you are to repay the same to me on demand.

"Signed at Dallas, Texas, this 9th day of January, 1950.
/s/ J. S. Paxton
"Accepted: V. L. Ware, Broker."

▮ The jury found that Ware had Paxton sign the above application for the purpose of obtaining compensation in excess of 10% per annum for the use of his money. Paxton testified, and the note in question, which was introduced in evidence, showed on its face, that Ware was the principal obligor; Ware had already signed the note before he had Paxton and wife sign their names beneath his signature as co-signers. Paxton further testified that when he first approached Ware about the $3,744 loan he was told by Ware that the amount was more than he could loan but that he would "figure out a way;" that he, Paxton, was told to come back and when he did come back, Ware informed him that "he had arranged it so he could get it at the bank." The checks received by Paxton in connection therewith in the total sum of $1,379.46 were checks of V. L. Ware and not checks of the Mercantile National Bank to whom the note was made payable. Ware endorsed the note on the back; "Pay to the Order of V. L. Ware for $2,169. V. L. Ware." There is evidence that Paxton made payments on the note directly to Ware; that the amount of the payments made by him were $2,580 but that he made no payments to the bank; that Ware made the monthly installment payments to the bank with no apparent relation to the payments made to him by Paxton. When the note was paid by Ware it was endorsed to him by the bank and the balance remaining unpaid on Paxton's indebtedness was carried forward and included in the note upon

which Ware brought this suit. The evidence, in our opinion, justifies the conclusion that the $3,744 Mercantile Bank note was a loan from the bank to Ware and not to the Paxtons, and that the loan to the Paxtons was from Ware and not from the bank. The evidence further justifies the conclusion that the manner in which the transaction was handled and the fact that Paxton was required by Ware to make the above written application for such loan in which he promised to pay the brokerage charge of $576 was for the purpose of Ware's obtaining compensation in excess of 10% per annum for the use of his money. The fact that Ware borrowed the money from the bank which he loaned to Paxton did not justify a charge of more than the legal rate. Such additional charge, regardless of the fact that it was styled and designated "brokerage," will be treated as additional interest. 42 Tex.Jur. 931. The courts look to the substance of a transaction and not merely to its form in determining whether a charge contracted for is for the use of money in excess of the amount allowed by law as interest. 42 Tex.Jur. 885; Glenn v. Ingram, 133 Tex. 431, 126 S.W. 2d 951.

Except as heretofore indicated, we find support in the evidence for the findings of the court that all of the charges and interest made and provided in the transactions in question were usurious.

As we understand the judgment, the Paxtons were found to have paid $629.-54 as usurious interest prior to March 31, 1949, or more than two years before suit was brought. The court allowed the Paxtons a credit for this amount against the principal of the note here sued upon by Ware. Such a credit is proper where the subject matter of the claimed credit is purely defensive in nature and operates merely as a negation of the demand of the plaintiff, and the statute of limitations does not apply.

The evidence shows that the note dated August 19, 1946 in the sum of $312 upon which brokerage charges claimed to be usu-rious in the sum of $62 were made, was fully paid by the Paxtons more than two years before this suit was brought. No connection is shown between such $62 payment and the subject matter of the indebtedness evidenced by the note here sued upon by Ware. Appellant's point No. 6 complains that the court erred in overruling objections and exceptions to transactions further back than two years from the filing of appellee's cross-action because same were barred by the two year statute of limitations. We are of the opinion that under the evidence outlined, the point is well taken insofar as the $62 payment is concerned. Clanton v. Community Finance & Thrift Corporation, Tex.Civ.App., 262 S.W.2d 252; DeWitt v. Kent County, Tex.Civ.App., 148 S.W.2d 213 and cases there cited.

As previously indicated, the total of the usurious charges claimed to have been made within a period of two years prior to the filing of appellee's cross-action was $936.40. The Paxtons were awarded recovery for double the amount of such usurious charges. Article 5073, Vernon's Annotated Revised Civil Statutes of Texas provides:

> "Within two years after the time that a greater rate of interest than ten per cent shall have been received or collected upon any contract, the person paying the same or his legal representative may by an action of debt recover double the amount of such interest from the person, firm or corporation receiving the same. Such action shall be instituted in any court of this State having jurisdiction thereof, in the county of the defendant's residence, or in the county where such usurious interest shall have been received or collected, or where said contract has been entered into, or where the parties who paid the usurious interest resided when such contract was made."

The above statute is the basis of any right which the Paxtons have to a double recovery of any payments by them of usurious charges of interest.

Appellant contends (1) that the court erred in computing the actual cash loaned to the Paxtons; (2) and the actual payments made by them, and insists that the evidence shows that (3) the Paxtons paid no interest or other claimed invalid or usurious charges; (4) that in truth and fact, the Paxtons have failed to repay the actual cash principal amount of their indebtedness to Ware.

We overrule appellant's contention that the court erred in computing the actual cash loaned to the Paxtons. Although there is no specific finding of the actual cash loaned, the judgment of the court, as explained by appellant, is not shown to be contrary to or unsupported by evidence concerning such loans.

The right to recover double the amount of usurious charges under Article 5073 is confined to usurious interest charges which have actually been paid. Jennings v. Texas Farm Mortg. Co., 124 Tex. 593, 80 S.W.2d 931. The right to such penalty is further limited to actions brought within two years after the date of payment of such usurious charges. Schmid v. City Nat. Bank of Wichita Falls, 132 Tex. 115, 114 S.W.2d 854.

In considering the question of what payments of usurious interest were made, it is also to be noted that when a note includes a principal amount which is entitled to be recovered, together with usurious interest charges which are invalid and not recoverable, payments made thereon which are undesignated and not specifically appropriated are to be applied to the principal, or the lawful portion of the contract, and not to payment of usurious interest. Clanton v. Community Finance & Thrift Corporation, supra, Alston v. Greene, Tex. Civ.App., 43 S.W.2d 478 and cases there cited; 42 Tex.Jur. 969.

The execution of a new note or obligation to the original lender which includes unpaid usurious interest charges made to the borrower on prior indebtedness is not payment of such usurious interest. Lasater v. First Nat. Bank of Jacksboro, 40 Tex. Civ.App. 237, 8 S.W. 429; First Nat. Bank of Jacksboro v. Lasater, 196 U.S. 115, 25 S.Ct. 206, 49 L.Ed. 408. The payment contemplated by the statute is an actual payment and not a further promise to pay.

There is no specific finding concerning the amount and time of the payments made by the Paxtons of any usurious interest, but if appellant's unquestioned explanation of the judgment is correct, it is based upon a finding that usurious interest charges in the amount of $936.40 were paid in the two year period prior to March 31, 1951, the date the Paxtons filed their cross-action against Ware. The evidence, when interpreted in the light of the law applicable thereto as above set out, does not support a finding that the Paxtons made payments of usurious interest in the sum of $936.40 during such two year period. The only positive evidence of usurious interest which we find to have been paid during such period is a payment of $115 on June 26, 1950, on the $576 brokerage note of January 9, 1950, and the sum of $89.50 which represents the amount paid on the $2,156 note dated May 19, 1948 over and above the valid principal amount due thereon. The evidence in our opinion justifies the conclusion that usurious charges in the amount of $567.50 were included in the last mentioned note and that the note was paid except for a balance of $478 which was carried over and included in the $3,744 note of January 30, 1950. More than the difference of $89.50 was paid during the two year period prior to the filing of appellee's cross-action and such amount therefore represented payment of usurious interest. Payments and advances on the $576 note prior to the $115 payment as shown by appellees' exhibit No. 27 had been in the exact total amount, and since the payments were not designated they should be applied to the advances and not to the invalid brokerage charges. If any of the "advances" which were paid during the period represented usurious charges, they, of course, would also be subject to a double recovery.

The record supports appellant's contention that the Paxtons failed, during such

period, to repay the actual cash principal amount of their indebtedness. Since this is true, undesignated payments made on accounts in which principal amounts in excess of the payments were due, should have been applied to the principal. Appellees have pointed out no payments during the period that were designated as interest payments nor have we been able to discover any payments other than the $115 and the $89.50 and possibly the payment of the "advances" above mentioned which were made on accounts in excess of the amount then due and payable thereon as principal. Although it is not clear, appellees' theory of the payments as best we can understand seems to be that usurious charges made by Ware and included in notes are considered as paid at the time of the execution of the note. This position is not tenable. The execution of a note including a usurious charge, is not payment of such charge. Even the execution of a new note or obligation of the original lender, including unpaid usurious charges on prior indebtedness is not payment of such usurious interest, but simply a further promise to pay. As already indicated, the presumed findings that usurious charges in the total amount of $936.40 were paid during the two year period prior to the filing of appellees' cross-action are not supported by evidence. The trial court erred in finding such amount of usurious charges to have been paid during the period and in granting appellees judgment for double the amount thereof. Appellees were entitled to a credit for the amount of such usurious charges paid prior to the two year period because of their connection with plaintiff Ware's demand, and were also entitled to a credit for the amount of such charges included in the note sued upon which were unpaid, but were not entitled to a double recovery thereon. Upon another trial the payments made and their application to principal or interest may be more fully developed.

■ The note sued upon contained the provision that if placed in the hands of a collector or if sued upon, a reasonable attorney's fee would be allowed. It is urged by appellant that the court erred in not granting him judgment for at least the sum of $304.80 as attorney's fees and urged that such amount was liquidated and a portion of the principal. This point is not well taken, although appellant, in our view of the case, is entitled to some amount as attorney's fee. The maker of a note, where an attorney's fee is provided for, is not liable therefor unless he is in default and he is not in default if he has alleged and proved a valid defense to all of the plaintiff's demand against him. World Exploration Co. v. Hoera-Rosenthal Safe Co., Tex.Civ.App., 34 S.W.2d 703; Inman v. Texas Land & Mortgage Co., Ltd., Tex.Civ. App., 78 S.W.2d 1032; Ehlinger v. Clark, 117 Tex. 547, 8 S.W.2d 666; 11 C.J.S., Bills and Notes, § 726, page 275. Appellee has plead and proved a valid defense against a substantial portion of appellant's demand. Since, however, it is our opinion that appellant was entitled to recover a part of his demand over and above appellees' offsets, he was entitled to some amount as attorney's fee. There is, however, no finding as to what is a reasonable charge under the circumstances. Upon another trial appellant will be entitled to recover attorney's fee but only on the portion of his demand which he may show himself entitled to recover judgment against appellees.

■ It is contended in appellant's fourth point that the court erred in sustaining appellees' objection to Ware's use of and testimony based upon data contained in an extract or memorandum showing what items and charges, including cash loans, were covered by the $3,048 note sued upon. It is appellant's contention that he should have been permitted to use such memorandum for the purpose of refreshing his memory. Ware testified that information shown on the memorandum had been taken directly from his original records and represented accurate extracts therefrom. The original records from which Ware prepared the memorandum

were introduced in evidence and he testified fully concerning the transactions upon which they were based. The original records, of course, constituted the best evidence and as a general rule when they are available, statements therefrom are not admissible. The circumstances here related do not constitute an exception to the general rule. The point is overruled.

We also overrule appellant's fifth point to the effect that the court erred in overruling objections to the action of appellees' attorney in his argument to the jury in reading from and displaying to the jury an alleged "false and incorrect extract of said transactions." There is nothing in the record to show what appellees' attorney said or read to the jury in this connection. In this state of the record, no error is shown.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded.

On Motion for Rehearing

In his motion for rehearing, appellee Paxton complains of our action in holding that he was not entitled to recover the $62 payment of usurious interest made to Ware in 1946. We held in our original opinion that appellee's right to recover this payment was barred by the two year statute of limitation. A further examination of the record shows that Ware did not plead the two year statute of limitation. He did plead the provisions of Article 5073, supra, and urged it in bar of Paxton's right to recover the item. It is our opinion, however, that Article 5073 which provides for recovery of penalty within two years after payment of a usurious charge does not bar recovery of the usurious charge itself. We, therefore, hold that appellee Paxton was, under the pleadings, entitled to recover the $62 item. In all other respects, the motion for rehearing is overruled.