Charles R. FREEMAN, Jr., et ux., Appellants,

v.

GONZALES COUNTY SAVINGS & LOAN ASSOCIATION, Appellee.

No. 978.

Court of Civil Appeals of Texas, Corpus Christi.

Aug. 29, 1975.

Rehearing Denied Sept. 18, 1975.

John V. Elick, Procter & Jones, Austin, for appellants.

R. L. Miller, Miller & Miller, Gonzales, for appellee.

## OPINION

NYE, Chief Justice.

This is a usury case. Plaintiffs, Charles R. Freeman, Jr. and wife, Katherine L. Freeman, brought suit against defendant, Gonzales County Savings & Loan Association, alleging that certain charges, arising out of a one year term note executed November 29, 1973, constituted a charge made for interest causing the total interest charged to be in excess of the rate allowed by law, therefore usurious. Judgment was granted to defendant Gonzales County Savings & Loan Association on its motion for summary judgment.

The facts of this case are relatively undisputed. The record shows that the defendant was, as the name indicates, a savings and loan association, organized and operated under the "Texas Savings and Loan Act", Article 852a, § 1.01 et seq., Tex.Rev. Civ.Stat.Ann. (1964). On or about November 29, 1973, the plaintiffs hereafter referred to as the Freemans executed a promissory note in the principal sum of $38,-400.00, payable to the order of defendant Association. Said note bore interest from its date until maturity, at the rate of nine

percent (9%) per annum, payable semiannually as it accrued. The principal of such note was due one year from November 29, 1973. The purpose of the loan was for the construction of two houses on land located on the outer limits of Seguin, Texas. The note was secured by a deed of trust on such land.

In order for the Freemans to obtain the loan from defendant, they were required to pay certain expenses and charges upon closing. Among these charges or expenses was a "loan fee" amounting to two percent (2%) of the loan. This was $768.00. This loan fee was in addition to other charges (attorney's fee $200.00; appraisal and inspection fee $384.00; interim construction inspection $400.00; credit report $10.00; interim Construction Policy $30.00; and recording fee $25.00) which were all set out in the loan settlement or closing statement furnished to the Freemans and signed by them.

Mr. Freeman was billed for the first semiannual interest payment, but such was not paid by the Freemans. The Savings and Loan took the amount due out of the escrow account and applied it to Freeman's interest payment. Thereafter, in June, 1974, the Freemans brought suit against the defendant Association alleging that they had been charged a rate of interest in excess of that allowed by law and it was therefore usurious. More specifically, the Freemans alleged that the "loan fee" (2%— $768.00) charged by the Association, constituted interest and when taken together with the prepaid interest of $3,456.00 (9%), constituted a charge for interest which was in excess of the rate allowed by law. The Freemans contend that the promissory note executed by them was therefore usurious and void to the full extent of the interest therein charged. The Freemans alleged further that they were entitled to recover double the amount of interest "contracted for, charged, or received". (Article 5069–1.-06, Tex.Rev.Civ.Stat.Ann.).

The Savings and Loan Association answered, stating that the charges ($768.00 loan fee) were for legitimate loan expenses incurred in connection with the loan and the closing thereof. The Savings and Loan then filed its motion for summary judgment alleging that the loan fee was a commitment fee for the making of the permanent loan and that such a charge was expressly authorized under the terms and provisions of the Texas Savings and Loan Act, Article 852a, § 5.07, and that as such it is not to be deemed as part of the interest collected or agreed to be paid on such loan within the meaning of the usury laws of this State. The Freemans also filed their motion for summary judgment alleging that the pleadings and depositions on file show that there is no genuine issue of any material fact and, therefore, they were entitled to judgment against the Association as a matter of law.

The trial court granted the Savings and Loan's motion for summary judgment, denying the Freemans' motion and held that the Freemans take nothing by their suit. From that judgment, the Freemans have duly perfected their appeal to this Court.

The Freemans bring forth three points of error alleging in effect that the trial court should not have granted summary judgment for the Association and that in the alternative, the trial court erred in failing to grant summary judgment for the Freemans suggesting that we reverse and render judgment accordingly.

■ The provisions of Rule 166–A, T.R. C.P., are applicable alike to defendants and plaintiffs who move for summary judgment; the judgment sought should be granted and if granted should be affirmed, if, and only if the summary judgment record establishes a right thereto as a matter of law. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.Sup.1970).

■ As stated by the Freemans in their brief, the primary question before the trial court was whether or not Section 5.07 of the Texas Savings and Loan Act permits a savings and loan association to charge a "loan fee" for making a loan without such

"loan fee" being considered as interest for purposes of determining if a loan transaction is tainted with usury. For a proper determination thereof, much depends upon the precise nature and purpose of a savings and loan association's operations as well as the statutes under which it operates. All associations in this State are chartered either by the Federal Home Loan Banks Board or by the Texas Savings and Loan Commissioner. Persons opening savings accounts and depositing funds receive dividends. Though dividends issued by savings and loan associations are computed in the form of interest, they are called dividends because the Texas Statute forbids their payment until the *expense* of operation of the association and the required minimum transfer to its loss reserves (Art. 852a, § 7.03) have been satisfied. See 44 Texas L.Rev. 966, 969 (1966). The object and business of savings and loan associations are matters of public utility. Although they are privately owned, they operate in the field of public interest like banks, insurance companies, and railroads, and are properly to be considered as quasi-public institutions. *Brazosport Savings and Loan Association v. American Savings and Loan Association,* 161 Tex. 543, 342 S.W.2d 747 (1961).

The Texas Constitution, Article 16, § 11, authorizes the Legislature to regulate lenders and establish maximum rates of interest. Said section reads in pertinent part as follows:

*"The Legislature shall have authority to classify loans and lenders, license and regulate lenders, define interest and fix maximum rates of interest; provided, however, in the absence of legislation fixing maximum rates of interest all contracts for a greater rate of interest than ten per centum (10%) per annum shall be deemed usurious; . . ."*

■ Pursuant to the Legislature's authority from the above cited constitutional provision, the Legislature in 1963 enacted the "Texas Savings and Loan Act", Article 852a, Tex.Rev.Civ.Stat.Ann., taking effect January 1, 1964. Included within such act is Section 5.07 relating to expenses, fees and charges for real estate loans which provides in pertinent part:

*"Sec. 5.07. Every association may require borrowing members to pay all reasonable expenses incurred in connection with the making, closing, disbursing, extending, readjusting or renewing of real estate loans,* which such charges may be collected by the association from the borrower and retained by it or paid to any persons, including any director, officer, or employee of the association rendering services in connection therewith, or paid directly by the borrower. In addition, associations may charge premiums for making such loans as well as penalties for prepayments or late payments; provided, that unless agreed in writing to the contrary, any prepayment of principal shall be applied on the final installment of the note or other obligation until fully paid, and thereafter on the installments in the inverse order of their maturity. *The expenses, fees and charges authorized herein shall be in addition to interest authorized by law, and shall not be deemed to be a part of the interest collected or agreed to be paid on such loans within the meaning of any law of this State which limits the rate of interest which may be exacted in any transaction.* . . ." (Emphasis supplied).

In other words to paraphrase Section 5.07, it states that the association may require borrowing members to pay all *reasonable expenses* incurred in connection with the *making* of a real estate loan. In addition, the association may charge premiums for making such loans—the expenses, fees and charges authorized herein shall be in addition to interest authorized by law and shall not be deemed to be a part of the interest collected or agreed to be paid on such loans within the meaning of the laws of this State.

Since the Texas Constitution (Article 16, § 11) authorized the Legislature to classify

loans and lenders and fix maximum rates of interest, it is clear that the Legislature did this in enacting Article 852a, (the Texas Savings and Loan Act). This Act permits them to charge premiums for making such loans. It permits its association to collect reasonable expenses incurred in connection with making the loan. This is in addition to the interest authorized by law (Article 5069–1.02). The premiums and the reasonable expenses collected are not to be deemed to be part of the interest collected or agreed to be paid on such loans within the meaning of the law of this State which limits the rate of interest.

In 1967, the Legislature again acted pursuant to our Constitution (Article 16, § 11) in enacting title 79, (Interest-Consumer Credit-Consumer Protection Act, Article 5069–1.01 et seq.). Article 5069–1.02, which became effective October 1, 1967, provides:

"*Except as otherwise fixed by law*, the maximum rate of interest shall be ten percent per annum. A greater rate of interest than ten percent per annum *unless otherwise authorized by law shall be deemed usurious.* All contracts for usury are contrary to public policy and shall be subject to appropriate penalties . prescribed in Article 1.06 of this Subtitle." (Emphasis added).

Article 5069–1.01(a) defines interest as "the compensation allowed by law for the use or forbearance or detention of money; . . . ." Article 5069–1.06 (1971) relating to penalties for charging usurious rates provides:

"(1) *Any person who contracts for, charges or receives interest* which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error."

The Freemans' main contention is that the loans made by the Association are sub-ject to the comprehensive code of legislation dealing with interest-consumer credit-consumer protection found in Article 5069–1.01 et seq., Tex.Rev.Civ.Stat.Ann. More particularly, they contend that the two percent (2%) "loan fee" constitutes interest, and when taken together with the nine percent (9%), which is admitted to be interest in the promissory note, constitutes usurious interest in excess of the lawful rate and is, therefore, in violation of Article 5069–1.02.

Those loans, particularly the one questioned here, which were made by a savings and loan institution are subject to the Texas usury laws to the extent that the stated rate of interest charged in such loans cannot exceed ten percent (10%). (Tex. Const. art. 16, § 11). Turning now to the defendant's closing statement, item B(8) reads as follows:

"8. Other charges (premium, commission or loan fee, etc.)—Loan fee 768.00"

The defendant Association in designating the $768.00 as a "loan fee", excluded those categories which are authorized by law, i. e., premiums or penalties. The question then before us is whether the summary judgment evidence shows that the $768.00 "loan fee" was a "reasonable expense incurred in connection with the making____of (the) real estate loan(s) . . .", which is authorized by law affecting this Association.

. Included in the summary judgment evidence was the deposition testimony of Henry A. Majefski, executive vice president of Gonzales County Savings and Loan Association. With respect to the $768.00 "loan fee", Mr. Majefski testified as follows:

"Q Now, item eight is the loan fee. Do you or do you not consider that to be interest charges?

A No, sir.

Q You do not. What do you consider it to be?

A I consider that as payment for having a permanent loan approved to use in connection with these houses

after they are completed and sold or not sold. I consider that the same fee as if I would give an approval on a loan and he pays me those fees and he goes to the bank and gets his interim loan. The bank would require a loan approval.

Q Well, is there any particular expense that Gonzales County Savings and Loan is out that this $768.00 is destined to cover?

A I would say that the general facilities of the association in negotiating the loan and advising and setting it up and working out details is an expense.

Q All right. And is that what your testimony is that that $768.00 is destined to cover?

A Yes.

Q All right. Is— In order that we can get that clear, you said it covers the expense of negotiating the loan?

A And having a permanent loan available.

Q Now, you are saying he is paying you $768.00—

A For twelve months.

Q —for consideration of having a permanent loan available?

A Right.

\* ⁎ ⁎ ⁎ \* \*

Q All right. Your testimony today is that that truth in lending statement was executed in connection with a permanent loan?

A Yes, sir.

Q Can you tell us what is a permanent loan in your opinion, or as you— Pertaining to this case.

A A permanent loan is a long term loan whereby it is made for a period, like in this case, 25 years.

Q All right.

A Setting out the monthly payments."

■ It appears to us from this deposition testimony that the "loan fee" as defined by Mr. Majefski was not shown to be a "reasonable expense" as a matter of law that would have authorized the granting of a summary judgment. Mr. Majefski's testimony vacillated. He first stated that it was considered as payment for having a permanent loan approved. Next, he says that it was for negotiating, advising, and setting up and working out the details of the loan as an expense. Then again, he states that it is for "having a permanent loan available—for twelve months."

■ The Texas Savings and Loan Act (Article 852a, § 5.07) specifically limits the charges that savings and loan associations may make. They may require their borrowing members to pay all reasonable expenses incurred; they may charge premiums for making such loans; and they may exact penalties for prepayments or late payments. The "loan fee", if authorized by law, must fall within one of the above categories, otherwise it is unauthorized. If unauthorized, it would be added to the interest charged, and make the transaction usurious.

■ Although Mr. Majefski testified that the "loan fee" was an "expense", this was a mere conclusion and was not established as a matter of law. There was no evidence that such expense (or the other expenses charged), were "reasonable". Mr. Majefski stated that he considered the $768.00 "loan fee" a proper charge for having a permanent loan available for the Freemans. If this was true, then this would make the "loan fee" a commitment fee, and as such would constitute interest. In *Imperial Corporation of America v. Frenchman's Creek Corporation*, 453 F.2d 1338 (C.C.A., 5th Cir. 1972), the Circuit Court of Appeals held that a commitment fee (there $67,500.00) was, by operation of law, front end interest for the purpose of determining whether the loan was usurious. The Court further stated that Texas Courts will give effect to it by spreading over the life of the loan the

impact of the judicially determined interest. See also *Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046 (1937); *Laid Rite, Inc. v. Texas Industries, Inc.*, 512 S.W.2d 384 (Tex.Civ. App.—Fort Worth 1974, no writ).

■ The burden was on the appellee Association to show, by competent summary judgment proof, that as a matter of law the "loan fee" was a reasonable expense incurred in connection with the making of the real estate loan and was therefore an authorized charge pursuant to the Texas Savings and Loan Act. The appellee has failed to satisfy this burden.

■ The fundamental and dominant rule controlling the construction of a statute is to ascertain, if possible, the intention of the Legislature expressed therein. The statute in question (Article 852a, § 5.07) which authorized the savings and loan associations to charge "reasonable expenses" incurred in connection with the making of a real estate loan, must be interpreted so as to conform with the Legislature's intent. *Calvert v. Texas Pipe Line Company*, 517 S.W.2d 777 (Tex.Sup.1974). The Texas Constitution, Article 16, § 11, authorized the Legislature to classify loans and lenders, define interest and fix maximum rates of interest. Pursuant to such mandate, the Savings and Loan Act was enacted allowing such institutions to charge reasonable expenses incurred in connection with the making of a real estate loan, without certain expenses being treated as interest. This must be shown in determining whether the transaction was usurious or not. The particular statutory enactment (§ 5.07) with which we are concerned is an exception to the general usury laws. The Legislature, by allowing such an exception, intended that, before such a charge can be made (without the same being treated as interest), there must be proof that such an expense was a "*reasonable* expense" and was incurred in connection with the making of the real estate loan. The summary judgment proof does not meet this test.

The summary judgment proof when tested by the rules governing the granting of such judgments did not entitle either party to a judgment. There are clearly fact issues that must be resolved by a jury or the finder of facts. The judgment of the trial court is reversed and the cause is accordingly remanded for a new trial.

Reversed and remanded.