**GONZALES COUNTY SAVINGS AND LOAN ASSOCIATION, Petitioner,**

v.

**Charles R. FREEMAN, Jr. et ux., Respondents.**

No. B-5598.

Supreme Court of Texas.

April 14, 1976.

Rehearing Denied May 19, 1976.

R. L. Miller, Gonzales, for petitioner.

Elick & Elick, John V. Elick, Bellville, for respondents.

McGEE, Justice.

This case involves a question of usury. The Freemans brought suit against the Gonzales County Savings & Loan Association, alleging that the interest rate on a $38,400 loan made to them by the savings and loan association exceeded the 10 percent per annum permitted by Article 5069–1.02.[1] Under the terms of the note, the $38,400 principal was due one year from the date of execution, with interest computed at the rate of 9 percent per annum. In addition, the Freemans were charged a fee of $768, or 2 percent of the principal, as a "loan fee." The Freemans contended that the "loan fee" of 2 percent constituted interest and when taken together with the stated interest rate of 9 percent, the total charge for interest was in excess of the 10 percent rate allowed by law. Thus, they argued that because the interest charge constituted usury, they were entitled to recover double the amount of interest "contracted for, charged, or received." Art. 5069–1.06. The savings and loan association contended that the "loan fee" was not interest for two reasons. First, they argued that such fee was a "commitment fee," and therefore, the charge did not fit within the statutory definition of interest. Secondly, they maintained that the loan fee was a "premium" under Article 852a, Section 5.07, which provides that premiums charged for the making of loans are not deemed to be interest for the purpose of determining usury.

Both the Freemans and the savings and loan association filed motions for summary judgment. The trial court granted a summary judgment for the savings and loan association. The court of civil appeals reversed and remanded. Tex.Civ.App., 526 S.W.2d 774. We agree with the judgment of the court of civil appeals and its disposition of the case. However, we cannot agree with some of the statements made by that court.

The savings and loan association agreed to extend the $38,400 loan to the Freemans so that they could construct two houses for future resale. In order for the Freemans to obtain this loan, they were required to pay certain expenses and charges upon closing. The charges were set forth in the loan settlement or closing statement furnished by the lender. There were, among others, charges for an appraisal, several inspections, and for attorney's fees. The fee in controversy was a charge for $768 denominated as a "loan fee." Item B(8) of the closing statement read as follows:

"8.    Other charges (premium, commission or loan fee, etc.) Loan Fee 768.00."

The Freemans failed to make their first semi-annual interest payment. Thereafter, they brought this suit alleging that this 2 percent "loan fee" was in reality an interest charge.

The summary judgment granted in favor of the savings and loan association may be upheld only if the record establishes a right thereto as a matter of law. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.1970). Further, there must have been no genuine issue of material fact present. *Torres v. Western Casualty and Surety Company*, 457 S.W.2d 50 (Tex.1970). In support of their position the savings and loan association maintains that this "loan fee" was proper consideration for having a permanent loan available for the Freemans' benefit. Mr. Majefski, an officer of the savings and loan association, stated in his deposition that this was one of the meanings he ascribed to the "loan fee" charge. Thus, such a fee was allegedly charged apart from the original $38,400 loan since the "loan fee" was intended only as compensation for allowing the Freemans the

1.  Statutory references are to Vernon's Texas Civil Statutes Annotated.

opportunity to make another loan in the near future. At this point, the court of civil appeals concluded that if this were true, the "loan fee" would be a "commitment fee" and as such, it would constitute interest. We disagree with that statement made by the court of civil appeals. The court of civil appeals has improperly stressed the labels placed upon the charges by the savings and loan association as being controlling of their real nature. It has often been said that courts will look beyond the form of the transaction to its substance in determining the existence or nonexistence of usury. *See, Schmid v. City Nat. Bank of Wichita Falls*, 132 Tex. 115, 114 S.W.2d 854 (1938). Such a rule is to be fairly applied to both borrowers and lenders alike. Labels put on particular charges are not controlling. A charge which is in fact compensation for the use, forbearance or detention of money is, by definition, interest regardless of the label placed upon it by the lender. Art. 5069–1.01(a). On the other hand, a fee which commits the lender to make a loan at some future date does not fall within this definition. Instead, such a fee merely purchases an option which permits the borrower to enter into the loan in the future. *See, e. g., Financial Federal Savings & Loan Association v. Burleigh House, Inc.*, 305 So.2d 59 (Fla.Dist.Ct.App. 1974); *D & M Development Co. v. Sherwood & Roberts, Inc.*, 93 Idaho 200, 457 P.2d 439 (1969); Prather, *Mortgage Loans and the Usury Laws*, 16 Bus.Law. 181, 188 (1960). It entitles the borrower to a distinctly separate and additional consideration apart from the lending of money. Therefore, the lender may charge extra for this consideration without violating the usury laws. *Greever v. Persky*, 140 Tex. 64, 165 S.W.2d 709 (1942).

The court of civil appeals relied on *Imperial Corporation of America v. Frenchman's Creek Corporation*, 453 F.2d 1138 (5th Cir. 1972) for the proposition that "commitment fees" are, by operation of law, front-end interest. However, the "commitment fee" in that case does not appear to have been a charge for having a loan available in the future. Instead, the obligation to pay the "commitment fee" seems to have arisen only after the parties had entered into the loan agreement. The trial court found that the $67,000 "commitment fee" was interest, and the lender did not contest such finding. Similarly, the other cases cited by the court of civil appeals did not involve fees given in return for an option to enter into a loan in the future. *See, Nevels v. Harris*, 129 Tex. 190, 102 S.W.2d 1046 (1937) and *Laid Rite, Inc. v. Texas Industries, Inc.*, 512 S.W.2d 384 (Tex.Civ.App.—Fort Worth 1974, no writ).

■ It should be emphasized that this opinion is limited to bona fide commitment fees. Charges which are in fact interest remain so, regardless of the label used. Where there is a dispute in the evidence as to whether the charge is merely a device to conceal usury, a question of fact is raised for the jury. *Greever v. Persky,* supra; 45 Am.Jr.2d *Interest and .Usury*, § 200 at 157 (1969); Annot., 81 A.L.R.2d 1280, §§ 2 and 3 at 1282–3 (1962). For example, whether or not a charge labeled a "commitment fee" is merely a cloak to conceal usury may depend upon whether or not the fee is unreasonable in light of the risk to be borne by the lender. In the instant case a fact issue was present as to whether or not this "loan fee" constituted a valid commitment fee. If the evidence produced at the new trial results in a finding of fact that the "loan fee" was a legitimate "commitment fee" in the sense that it was intended only as compensation for having the future loan available, and for no other purpose, then such fee is not interest.

The savings and loan association has also attempted to justify the existence of the "loan fee" by asserting that such a charge

was a "premium." Their contention is that the Legislature intended the term "premium" to represent an amount paid or charged for the right to enter into the loan. They maintain that this $768 "loan fee" is in reality a "premium" which the Legislature, by Article 852a, Section 5.07, has authorized them to charge.

The Texas Constitution, Article 16, Section 11, authorizes the Legislature to regulate lenders and establish maximum rates of interest. Section 11 reads in pertinent part as follows:

> "*The Legislature shall have authority to classify loans and lenders, license and regulate lenders, define interest and fix maximum rates of interest*; provided, however, in the absence of legislation fixing maximum rates of interest all contracts for a greater rate of interest than ten per centum (10%) per annum shall be deemed usurious; . . . " (Emphasis added).

Pursuant to this authority, the Legislature in 1963 enacted the "Texas Savings and Loan Act," Article 852a, Tex.Rev.Civ.Stat. Ann., taking effect January 1, 1964. Included within such act is Section 5.07 which provides in pertinent part:

> "Sec. 5.07. *Every association may require borrowing members to pay all reasonable expenses incurred in connection with the making, closing, disbursing, extending, readjusting or renewing of real estate loans*, which such charges may be collected by the association from the borrower and retained by it or paid to any persons, including any director, officer, or employee of the association rendering services in connection therewith, or paid directly by the borrower. *In addition, associations may charge premiums for making such loans as well as penalties for prepayments or late payments* ; provided, that unless agreed in writing to the con-

trary, any prepayment of principal shall be applied on the final installment of the note or other obligation until fully paid, and thereafter on the installments in the inverse order of their maturity. *The expenses, fees and charges authorized herein shall be in addition to interest authorized by law, and shall not be deemed to be a part of the interest collected or agreed to be paid on such loans within the meaning of any law of this State which limits the rate of interest which may be exacted in any transaction. . . . "* (Emphasis added).

The problem presently confronting us concerns our interpretation of the term "premium." The petitioner, Gonzales County Savings and Loan Association, contends that Section 5.07 of Article 852a as drafted grants to savings and loan associations the authority to charge borrowers an open-ended initial charge for the right to receive a loan. They argue that such a charge is not interest because it is a "premium" under Section 5.07.

■ Article 16, Section 11 of the Texas Constitution expressly grants the Legislature the authority to "define interest and fix maximum rates of interest." In an effort to exercise this authority, the Legislature enacted Section 5.07 of Article 852a seeking to exclude certain charges made by savings and loan associations from being considered as constituting interest. As was stated earlier, courts must look beyond mere labels to the substance of many charges in order to be able to determine whether such fees in reality constitute usury. *See, Temple Trust Co. v. Sewell,* 133 Tex. 417, 126 S.W.2d 943 (1939). It is evident that the Legislature established no maximum rate allowable on those charges termed "reasonable expenses" or "penalties." However, in the case of reasonable expenses, courts can clearly meet their duty

to consider substance over form since we may determine the reasonableness of the expenses in light of the amount of actual work done. Further, penalties need bear some reasonable relationship to the amount of loss or inconvenience suffered by the lender due to prepayment or late payment by the borrower. Such a thorough examination would obviously be impossible in those instances where a lender asserted that a charge levied was a "premium." Savings and loan associations may not be allowed a convenient avenue of escape from the usury laws by simply contending that a front-end charge they require borrowers to pay is a legislatively authorized "premium" and therefore, not interest. As Section 5.07 dealing with premiums now stands, courts are unable to look beyond the mere label to the substance of the word in order to discern its true nature.

Thus, an extremely complex problem has arisen concerning the Legislature's power to "define interest and fix maximum rates of interest." The Legislature has attempted to exclude from consideration as interest a charge which would otherwise plainly fit within the definition of "interest" as set out in Article 5069–1.01(a).[2] With reference to "premiums," Section 5.07 of Article 852a does not purport to define interest and cannot be regarded as an attempt by the Legislature to fix maximum rates of interest. *See, Community Finance & Thrift Corp. v. State*, 161 Tex. 619, 343 S.W.2d 232 (1961). In the absence of language setting a maximum rate for such charges or an appropriate modification of the definition of "interest," such "premium" charges will be deemed to constitute interest when seeking to determine the existence or nonexistence of usury.[3]

The case before us is on summary judgment. The only evidence concerning the true purpose of the "loan fee" comes from the oral deposition of Henry Majefski, the executive vice president of the savings and loan association, and from the Loan Settlement Agreement supplied by the association. As noted by the court below, Majefski's testimony shows at least two possible purposes of the "loan fee." First, he stated that it was consideration for having a permanent loan available for the Freemans' benefit. Later he testified that it was intended to cover the expenses of negotiating the loan. The Loan Settlement Agreement listed the loan fee as one of the "expenses incurred in connection with this [the one-year] loan." As the court of civil appeals correctly pointed out, the savings and loan association did not establish as a matter of law that the two percent "loan fee" was a "reasonable" expense. The burden was on the savings and loan association as the movant to establish the true nature of this "loan fee" and that burden was not discharged. It has not been established that this "loan fee" constituted a valid commitment fee nor has it been revealed whether or not such charge represents a fee to cover "reasonable" expenses. It is clearly evident that the real nature of this charge has not been established as a matter

2. Tex.Rev.Civ.Stat.Ann. article 5069–1.-01(a)(1971) defines "interest" as " . . . the compensation allowed by law for the use, forbearance or detention of money; . . . " *See also,* Art. 5069–2.01(h).

3. Tex.Rev.Civ.Stat.Ann. article 5069–1.02 (1971) provides:
   "*Except as otherwise fixed by law, the maximum rate of interest shall be ten per-cent per annum.* A greater rate of interest then ten percent per annum *unless otherwise authorized by law shall be deemed usurious.* All contracts for usury are contrary to public policy and shall be subject to appropriate penalties prescribed in Article 1.06 of this Subtitle." (Emphasis added).

of law and that the remand was therefore proper. The judgment of the Court of Civil Appeals is correct and is hereby affirmed.