United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 1, 2003**

Charles R. Fulbruge III
Clerk

Revised July 23, 2003

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 02-20197**

_____

**In the Matter of: CPDC, INC.,**

**Debtor.**

------------------

**JOSEPH ZER-ILAN; IDEAL SYSTEMS, INC.,**

**Appellees,**

**versus**

**GARY FRANKFORD; CPDC, INC.,**

**Appellants.**

_____

**Appeal from the United States District Court
for the Southern District of Texas**

_____

Before JONES, WIENER, and DeMOSS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Gary Frankford and CPDC, Inc. (collectively "CPDC") sued Joseph Zer-Ilan and Ideal Systems, Inc. in bankruptcy court for violations of the Texas usury statute. They won a substantial judgment in the bankruptcy court, but the district court reversed. The principal issue on appeal is whether Zer-Ilan and Ideal timely cured alleged usury violations, bringing them within the safe

harbor afforded by Tex. Fin. Code Ann. § 305.103. Finding no error in the district court's conclusion, we affirm.

## BACKGROUND

In the summer of 1994, Ronald Sexton entered the final stages of purchasing a potential real estate development, known as "Cedar Point," in Polk County, Texas.[1] The seller was Bluebonnet Savings Bank ("Bluebonnet"). Sexton and Bluebonnet agreed to a purchase price of $1,100,000, for which Bluebonnet would convey to Sexton (1) Cedar Point, (2) 100% of the stock in the utility company that served Cedar Point, and (3) 199 performing promissory notes. In preparation for his purchase, Sexton incorporated CPDC, Inc. to serve as the owner and developer of Cedar Point.

When Sexton was apparently unable to secure a loan in time for the purchase of Cedar Point, he entered into negotiations with Zer-Ilan for short-term financing. Zer-Ilan, a resident of California, was half-owner, with his wife, and president of a California-based company selling security services and equipment. In late July, Sexton negotiated a highly profitable sale/leaseback arrangement with Zer-Ilan: for a loan of $1,400,000 to Sexton, Zer-Ilan stood to gain between $525,000 - $900,000 in profit within a few months.

Before Sexton and Zer-Ilan executed their agreement, however, Zer-Ilan's attorney, Marvin Leon, received word from a

---

[1] Cedar Point constituted 43 acres of unimproved land.

Texas lawyer, John Hollyfield, that the sale/leaseback arrangement ran afoul of the Texas usury laws. The parties scuttled their original agreement and sought to create a non-usurious financing arrangement. On August 2, they signed a new short-term financing agreement. Pursuant to the financing agreement:

1. Sexton executed a promissory note for $1,075,000, plus 18% interest, payable to Zer-Ilan. As security for this note, Zer-Ilan received a first lien on Cedar Point. The funds from this note were used to purchase Cedar Point, and Sexton's company, CPDC, became the successor borrower.

2. Sexton executed another secured promissory note for $200,000, plus 18% interest, payable to Zer-Ilan. The security for this note was a security agreement, covering the stock of the utility company that served Cedar Point. Sexton used the funds from this note to purchase the utility company that served Cedar Point.

3. Zer-Ilan paid Sexton $100,000 for the 199 performing promissory notes.

4. Ideal Systems and CPDC executed a Consulting Agreement, whereby CPDC would pay $750,000 to Ideal Systems (Zer-Ilan's company) for a security system and related services at Cedar Point for two years.

The promissory notes and the deed of trust all contained usury savings clauses in which Zer-Ilan disavowed any intent to charge or receive interest in excess of the amount permitted by law.

Several weeks after the financing agreement was executed, Leon informed Zer-Ilan that the 18% interest charged on the promissory notes was usurious under Texas law. Accordingly, in late August 1994, Sexton and Zer-Ilan modified the agreement to (1) retroactively reduce the interest on the promissory notes from 18%

3

to 10%, (2) release any claims by Sexton and CPDC against Zer-Ilan for the prior inclusion of a higher interest rate, and (3) reiterate their intent to enter into a non-usurious financing agreement. They did not modify the consulting agreement, because Leon did not tell Zer-Ilan that this part of the financing agreement was usurious under Texas law.

In early September 1994, CPDC was unable to make its first payments due under the promissory notes and consulting agreement. Zer-Ilan refused to extend the due date. When CPDC failed to make its second payment, Zer-Ilan and Ideal Systems notified CPDC that it was now in default under the consulting agreement. On November 7, Zer-Ilan demanded that CPDC pay the installment due under the $1,075,000 promissory note; when no payment was received, he accelerated the loan and demanded payment of the principal, accrued interest, and attorneys' fees. Zer-Ilan posted Cedar Point for foreclosure.

Sexton and Zer-Ilan then embarked on extended workout negotiations. On April 27, 1995, Zer-Ilan's new attorney, John Nabors, sent Sexton a letter renouncing Zer-Ilan's right to receive any interest under the notes that could be construed as usurious, and Ideal waived its right to compensation under the consulting services agreement. In early May, culminating the impasse that had been reached, Zer-Ilan attempted foreclosure on Cedar Point and CPDC filed for bankruptcy.

A year later, Ben Floyd was appointed a Chapter 11 trustee for CPDC by the bankruptcy court. Subsequently, Gary Frankford, an unsecured creditor of CPDC, filed on the debtor's behalf an adversary complaint against Zer-Ilan and Ideal Systems, alleging usury, equitable subordination, and avoidance of transfers. Floyd, as trustee, intervened. The parties filed cross motions for partial summary judgment, and Zer-Ilan and Ideal Systems also moved to dismiss Frankford for lack of standing. The bankruptcy court granted partial summary judgment in favor of Frankford and CPDC. The court held that because the consulting agreement constituted usurious interest on the loans, Zer-Ilan's and Ideal's rights under all of the parties' notes and agreements were extinguished. The court further ordered a trial to quantify the amount of usurious interest by determining the value of the consulting agreement.[2]

The jury valued the consulting agreement at $40,000, not the $750,000 specified by Sexton and Zer-Ilan. The bankruptcy court also accepted the conclusions of an affidavit submitted by the CPDC's expert, which stated that the 199 performing promissory notes were undervalued by approximately $61,200. Thus, the bankruptcy court entered final judgment on February 3, 1999,

---

[2] The bankruptcy court dismissed Frankford's equitable subordination claim as moot.

ordering Zer-Ilan and Ideal Systems to pay nearly $1.8 million in damages and over $380,000 in attorneys' fees and court costs.

Zer-Ilan and Ideal appealed the judgment to the district court. Following its de novo review, the district court held that (1) Frankford lacked standing to sue Zer-Ilan and Ideal Systems, (2) Zer-Ilan and Ideal timely cured any usury violations in the 1994 financing agreement by means of the August 1994 renegotiation of the promissory notes and the April 1995 renunciation letter, and (3) the bankruptcy court erred in accepting CPDC's expert evidence concerning the alleged value of the 199 performing promissory notes. Consequently, the district court reversed the bankruptcy court judgment. Frankford and CPDC timely filed a notice of appeal.

**DISCUSSION**

"Bankruptcy court rulings and decisions are reviewed by a court of appeals under the same standards employed by the district court hearing the appeal from bankruptcy court; conclusions of law are reviewed de novo, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de novo." Century Indem. Co. v. NGC Settlement Trust (In re National Gypsum Co.), 208 F.3d 498, 504 (5th Cir. 2000). Although this court may certainly benefit from the district court's analysis of the issues presented, "[t]he amount of persuasive weight, if any, to be accorded the district court's conclusion[s]

6

. . . is entirely subject to our discretion." Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II), 994 F.2d 1160, 1163 (5th Cir. 1993) (quoting Equitable Life Assurance Soc'y v. Sublett (In re Sublett), 895 F.2d 1381, 1384 n.5 (11th Cir. 1990)).

"We review the grant of summary judgment de novo, applying the same standards as the trial court." Sholdra v. Chilmark Fin. L.L.P. (In re Sholdra), 249 F.3d 380, 382 (5th Cir.), cert. denied, 534 U.S. 1042 (2001). Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); see also Fed. R. Civ. P. 56(c). If the moving party meets its burden, the non-movant must designate specific facts showing there is a genuine issue for trial. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

CPDC argues that the district court erred in holding that Zer-Ilan and Ideal, by means of their April 27, 1995 letter, cured any violation of the Texas usury statute based upon the fees owed under the consulting agreement between CPDC and Ideal. The error, CPDC contends, is that Zer-Ilan and Ideal did not cure the usury violation within sixty days of actually discovering the violation. We disagree.

Under Texas law in 1995,

(4)(A) A person has no liability to an obligor for a violation of [the usury statute] if:

(i) within 60 days after the date the person actually discovered the violation the person corrects the violation as to the obligor by taking whatever actions and by making whatever adjustments are necessary to correct the violation, including the payment of interest on a refund, if any, at the applicable rate provided for in the contract of the parties; and

(ii) the person gives written notice to the obligor of the violation before the obligor has given written notice of or has filed an action alleging the violation of this Subtitle.

(B) For the purposes of this section, the term "actually discovered" may not be construed, interpreted, or applied in a manner that refers to the time or date when, through reasonable diligence, an ordinarily prudent person could or should have discovered or known as a matter of law or fact of the violation in question, but the term shall be construed, interpreted, and applied to refer to the time of the discovery of the violation in fact.

Tex. Rev. Civ. Stat. Ann. art. 5069-1.06(4)(A-B) (Vernon 1993), repealed and codified at Tex. Fin. Code Ann. § 305.103 (Vernon 1998 & Supp. 2002). CPDC argues that Zer-Ilan and Ideal "actually discovered" that the fees provided for in the consulting agreement constituted usurious interest more than sixty days before Zer-Ilan and Ideal sent the April 27, 1995 cure letter. Actual discovery allegedly occurred either on August 16, 1994, when Zer-Ilan was advised by his attorneys that the 18% interest rate on the $1,075,000 secured promissory note was usurious, or by October 17, 1994, when Ideal's right to payment under the consulting agreement vested.

8

CPDC does not contend that Zer-Ilan and Ideal had actual, subjective knowledge that the consulting agreement constituted usurious interest on either August 16 or October 17, but rather that the objective facts which form the basis of the usury violation were known to them on these dates. CPDC thus asserts that a creditor "actually discovers" a violation when he learns of the objective facts that form the basis of the usurious transaction. Further, CPDC suggests, a creditor must prove that he was diligent in attempting to discover the underlying facts. Essentially, CPDC seeks to interpret "actually discovered" as though it were the discovery rule, which is sometimes applied to defer the accrual of a cause of action for statute of limitations purposes. See Wagner & Brown, Ltd. v. Horwood, 58 S.W.3d 732, 734 (Tex. 2001) ("The discovery rule exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim.").

CPDC's legal position conflicts with the plain language of the usury savings statute. "[I]t is cardinal law in Texas that a court construes a statute, 'first, by looking to the plain and common meaning of the statute's words.' If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms." Fitzgerald v. Advanced Spine

9

Fixation Sys., 996 S.W.2d 864, 865 (Tex. 1999) (quoting Liberty Mut. Ins. Co. v. Garrison Contractors, 966 S.W.2d 482, 484 (Tex. 1998)).  Section 1.06(4)(B) explicitly states that "the term 'actually discovered' may not be construed, interpreted, or applied in a manner that refers to the time or date when, through reasonable diligence, an ordinarily prudent person could or should have discovered or known as a matter of law or fact of the violation in question."  Tex. Rev. Civ. Stat. Ann. art. 5069-1.06(4)(B) (emphasis added).  The statute disavows interpreting "actual discovery" in accord with the discovery rule.  Actual discovery occurs under the statute when the creditor subjectively discovers that he has violated the prohibitions on usury.  Id.

This interpretation of "actual discovery" is fortified by "[t]he primary rule in statutory interpretation [] that a court must give effect to legislative intent."  Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 383 (Tex. 2000) (citing Tex. Gov't Code Ann. § 312.005 (Vernon 1998)).  The Texas legislature intended cure provisions in the usury statute to encourage self-correction by lenders of known usury violations so that they could avoid being sued.  See Jim Walter Homes, Inc. v. Gibbens, 608 S.W.2d 706, 712 (Tex. Civ. App.–San Antonio 1980, writ ref'd n.r.e.).  Interpreting the actual discovery element to require actual, subjective knowledge of the violation is consistent with this purpose.

10

Attempting to show that Zer-Ilan and Ideal actually knew of the usurious nature of the consulting agreement, CPDC points, inter alia, to the deposition testimony of Marvin Leon, Zer-Ilan's attorney, and to communications in late 1994 between lawyers retained by Zer-Ilan that discussed whether the consulting agreement might be usurious. Except for Leon's testimony, this evidence was not part of the bankruptcy court record before its entry of judgment. Instead, the district court allowed the evidence to be added to the record on appeal after CPDC moved to supplement under Bankruptcy Rule 8006. Zer-Ilan and Ideal objected to the supplementation. A preliminary issue thus arises as to the propriety of the supplemental order, and its resolution will determine the evidentiary record we must review.

Rule 8006 provides that the record on appeal from a bankruptcy court decision consists of designated materials that became part of the bankruptcy court's record in the first instance. The rule does not permit items to be added to the record on appeal to the district court if they were not part of the record before the bankruptcy court. In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 802 (E.D. Pa. 1986); see also Sipes v. Atlantic Gulf Communities Corp. (In re General Dev. Corp.), 84 F.3d 1364, 1369 (11th Cir. 1996) (supplementation of record on appeal allowed only by documents considered by the bankruptcy court). The district court erred in allowing CPDC to supplement the record with

11

documents and testimony that were not offered and admitted before the bankruptcy court entered summary judgment.  See Kabayan v. Yepremian (In re Yepremian), 116 F.3d 1295, 1297 (9th Cir. 1997) (refusing to consider deposition testimony and declarations taken after the entry of summary judgment).  Thus, we will not consider such untimely-submitted evidence in evaluating CPDC's arguments.

CPDC's admissible evidence does not raise a genuine issue of material fact as to whether Zer-Ilan and Ideal actually knew that the consulting agreement constituted usurious interest more than sixty days before the April 27, 1995 cure letter was sent to CPDC.  Leon testified that he and John Hollyfield (another attorney) warned Zer-Ilan, around the time the consulting agreement was executed, that if Ideal did not perform any services under the consulting agreement, payments due under the agreement might constitute usurious interest.  At no point before February 27, 1995 (sixty days before the cure letter was sent) did Zer-Ilan, Ideal, or any of their attorneys conclude that the consulting agreement constituted usurious interest.  "Concerns" that a transaction may be usurious cannot constitute knowledge or recognition of illegality sufficient to constitute "actual discovery."

Confirming the uncertainty expressed by Leon and Hollyfield, it is dubious at best that payments due under the

12

consulting agreements would even constitute interest payments.[3]

"Whether an amount of money is interest depends not on what the parties call it but on the substance of the transaction." <u>First USA Mgmt. v. Esmond</u>, 960 S.W.2d 625, 627 (Tex. 1997) (citing <u>Gonzales County Sav. & Loan Ass'n v. Freeman</u>, 534 S.W.2d 903, 906 (Tex. 1976)). This court has recognized that

> Where . . . a charge is admittedly compensation for the use, forbearance, or detention of money, it is, by definition, interest regardless of the label placed upon it or the artfulness with which it is concealed. Indeed, the [Texas] Supreme Court in <u>Gonzales Savings</u> held that we must look beyond the superficial appearances of the transactions to their substance in determining the existence or nonexistence of usury.

<u>Najarro</u>, 904 F.2d at 1002, 1006-07 (quoting <u>Skeen v. Slavik</u>, 555 S.W.2d 516, 521 (Tex. Civ. App. – Dallas 1977, writ ref'd n.r.e.)). "Amounts charged or received in connection with a loan are not interest if they are not for the use, forbearance, or detention of money." <u>First USA Mgmt.</u>, 960 S.W.2d at 627.

---

[3] Although the consulting agreement was a separate document from the documents which contained the loan agreement the parties do not dispute that under Texas law the consulting agreement may be considered part of the same transaction as the loan. "The question of usury must be determined by a construction of all the documents constituting the transaction, interpreted as a whole, and in light of the attending circumstances." <u>Tygrett v. Univ. Gardens Homeowners' Ass'n</u>, 687 S.W.2d 481, 485 (Tex. App.–Dallas 1985, writ ref'd n.r.e.); <u>see also</u> <u>Najarro v. SASI Int'l, Ltd.</u>, 904 F.2d 1002, 1008-09 (5th Cir. 1990) ("However, where, as in the case sub judice, the note does not constitute the entire contract, we believe that Texas courts would still find the transaction usurious on its face if some other documents, which constitute part of the transaction and do not contradict the note, establish usury on their face.").

13

Pursuant to the consulting agreement, Ideal was to provide home security systems and a monitoring center for Cedar Point, to disclose trade secrets to CPDC, and render associated services. "Fees which are an additional charge supported by a distinctly separate and additional consideration, other than the simple lending of money, are not interest and thus do not violate the usury laws."[4] First Bank v. Tony's Tortilla Factory, 877 S.W.2d 285, 287 (Tex. 1994). Moreover, the parties to the consulting agreement were not the borrower CPDC and the lender Zer-Ilan, but CPDC and third-party Ideal. On their face, the consulting agreement payments thus appear not to have constituted interest.

It is certainly possible that illusory consulting payments could constitute interest. See, e.g., Marill Alarm Sys., Inc. v. Equity Funding Corp. (In re Marill Alarm Sys.), 81 B.R. 119 (S.D. Fla. 1986). It is also at least conceivable that a court could pierce the corporate veil between Ideal and Zer-Ilan. See, e.g., Sapphire Homes, Inc. v. Gilbert, 426 S.W.2d 278 (Tex. Civ. App. – Dallas 1968, writ ref'd n.r.e.) (piercing corporate veil

---

[4] See Tex. Commerce Bank v. Goldring, 665 S.W.2d 103, 104 (Tex. 1984) (attorney's fee); Stedman v. Georgetown Sav. & Loan Ass'n, 595 S.W.2d 486, 489 (Tex. 1979) (commitment fee); Freeman, 534 S.W.2d at 906 (commitment fee); Southland Life Ins. Co. v. Egan, 126 Tex. 160, 86 S.W.2d 722, 724-25 (Tex. 1935) (prepayment penalty); Bearden v. Tarrant Sav. Ass'n, 643 S.W.2d 247, 249 (Tex. App.-Fort Worth 1982, writ ref'd n.r.e.) (prepayment penalty); Morris v. Miglicco, 468 S.W.2d 517, 519 (Tex. Civ. App.-Houston [14th Dist.] 1971, writ ref'd n.r.e.) (brokerage fee).

14

where lenders used their wholly owned corporation to avoid usury laws). Such possibilities do not, however, afford a factual basis upon which Zer-Ilan could actually discover that the consulting fee constituted interest subject to Texas usury laws. Finally, Ideal's failure to perform services pursuant to the contract is irrelevant here, because CPDC never made a single payment on it. In sum, CPDC's evidence does not raise a genuine issue of material fact that could support a finding that Zer-Ilan knew in 1994 that any payment under the consulting agreement would be usurious interest.

CPDC also argues that the cure provision in the Texas usury statute allows correction of bona fide mistakes, such as clerical errors, but not errors regarding judgments as to the legality of a transaction. CPDC bases its argument on section 1640(b) of the federal Truth in Lending Act ("TILA"), which states that a creditor can avoid liability under TILA if "within sixty days after discovering an error . . . the creditor . . . notifies the person concerned of the error and [corrects the error]." 15 U.S.C. § 1640(b) (2000). In its appellate brief, CPDC quotes § 311.023(4) of the Texas Government Code Annotated (Vernon 1998) for the proposition that we should interpret the Texas cure provision in light of TILA because in Texas, courts should refer to 'laws on the same or similar subjects' regardless of a statute's ambiguity. This argument is meritless.

First, CPDC misrepresents Section 311.023, which permits but does not require a court to consider the same or similar subjects. Tex. Gov't Code Ann. § 311.023(4). It is not mandatory. See Guilzon v. Comm'r, 985 F.2d 819, 823 (5th Cir. 1993) ("It is well-settled that the word "may" is a permissive term."). In fact, looking to other statutes is improper when the interpretation of a statute is self-evident from its text. "When the purpose of a legislative enactment is obvious from the language of the law itself, there is nothing left to construction. In such case it is vain to ask the courts to attempt to liberate an invisible spirit, supposed to live concealed within the body of the law." Fitzgerald, 996 S.W.2d at 865 (quoting Dodson v. Bunton, 81 Tex. 655, 658, 17 S.W. 507, 508 (1891)).

Second, CPDC obfuscates the requirements of Texas law by misdirecting this court's attention to an irrelevant section of TILA. In Texas, there are two distinct defenses against an allegation of usury: (1) the violation arose from "accidental or bona fide error" committed by the creditor, and (2) a timely cure letter was sent by the creditor to the obligor, disclaiming or correcting the usurious loan terms. See Pagel v. Whatley, 82 S.W.3d 571, 576 (Tex. App.–Corpus Christi 2002, pet. denied) (noting and discussing these "two affirmative defenses"). CPDC erroneously asserts that the 60-day safe harbor period applies only to curing bona fide usurious errors in the creation of a financing agreement.

16

CPDC would reduce the cure provision to the separate defense of a bona fide error.

Finally, while it is true that some courts have read TILA section 1640(b) to apply only to bona fide errors,[5] this circuit has explicitly avoided answering whether the provision is so limited. See James v. City Home Serv., Inc., 712 F.2d 193, 195 (5th Cir. 1983). Since we will not consider TILA in interpreting the Texas cure provision, for the reasons previously explained, we need not answer this question today.

CPDC also argues that Zer-Ilan and Ideal violated the usury statute when Ideal filed a proof of claim seeking to recover money owed by CPDC to Ideal. The proof of claim included the consulting agreement as an attachment. The proof of claim at issue was filed on September 11, 1995, almost seven months after Zer-Ilan and Ideal executed and transmitted the cure letter to CPDC in April 1995. Zer-Ilan and Ideal filed an amended proof of claim on October 27, 1995 seeking less money and excluding the consulting agreement as part of the claim.

CPDC's argument that the filing of the September 11, 1995 proof of claim constitutes a violation of the usury law fails. We have previously held that amending a pleading to delete a claim that is alleged to constitute a usurious charge of interest

---

[5]See Thomka v. A.Z. Chevrolet, Inc., 619 F.2d 246, 251-52 (3d Cir. 1980); Pearson v. Easy Living, Inc., 534 F. Supp. 884, 895 (S.D. Ohio 1981).

17

precludes usury liability based on the filing of the allegedly usurious claim. Gibraltar Sav. v. LDBrinkman Corp., 860 F.2d 1275, 1296 (5th Cir. 1988). There is no reason to treat the amendment of a proof of claim filed in a bankruptcy proceeding any differently from a claim filed as part of a complaint in a civil proceeding for purposes of the Texas usury statute. Under Gibraltar Savings, CPDC cannot recover for violations of the usury statute based on Zer-Ilan and Ideal's proof of claim.

Having found that the district court properly entered judgment based on appellees' timely cure of any usury violations and that the proof of claim filed by Ideal did not constitute a charging violation under the usury laws, we need not reach the other issues raised by CPDC, such as Frankford's standing to sue. See Allandale Neighborhood Ass'n v. Austin Transp. Study Policy Advisory Comm., 840 F.2d 258, 263 n.15 (5th Cir. 1988).

## CONCLUSION

Properly interpreted, the cure provision of the Texas usury statute affords a creditor sixty days to cure a usury violation from the date when the creditor subjectively knows or recognizes that a contract violates the Texas usury laws. Based on this standard we agree with the district court that Zer-Ilan and Ideal timely cured any usury violation arising out of the consulting agreement between CPDC and Ideal. Therefore, we affirm the judgment of the district court.

18

**AFFIRMED.**